ABEL EDGELL *vs.* BENNETT and LOWELL.

A widow is not to be rejected as a witness because her husband was interested, unless she has herself an interest in the event of the suit.

A widow has an interest to increase the personal fund and prevent debts from coming against the estate of her husband ; but that interest must be shown by evidence that her husband died in this state and left personal property to be administered upon.

The declarations of a grantor, made after the execution of a deed, are not admissible to prove it fraudulent.

A widow is not permitted to testify to declarations made by her husband during coverture, to contradict and impeach the testimony which he gave on a former trial between the parties.

It must appear that the county court erred in admitting or rejecting testimony, excepted to at the time, or this court will not reverse their judgment.

A decision of the county court on a motion for a new trial is not subject to be re-examined by this court.

This was an action of ejectment for certain lands in Lyndon. Plea, the general issue.

The plaintiff claimed title by virtue of the levy of an execution which was conceded to be regular. The judgment was, as appears from the case, predicated upon certain notes executed to the plaintiff by one Micajah M. Lowell previous to March, 1825. The defendants claimed title by vittue of a deed from said Micajah M. Lowell, dated March 22, 1825, prior to the levy of the execution, conveying said Lowell's whole farm for a consideration expressed of $400. The plaintiff, who was a creditor of Lowell, contended that this deed was fraudulent and void as against creditors, and gave evidence to prove this fact, and that said Gideon Lowell was privy thereto.

The defendants introduced evidence to establish the deed as executed *bona fide* and for a valuable consideration.

Upon a former trial, (Vide 4 Vt. Rep. 405, the said M. M. Lowell, now deceased, was sworn as a witness, and the testimony which he then gave is now stated on oath by Judge Sias from his minutes. The plaintiff further offered Lois Lowell, widow of said M. M. Lowell, to testify to facts tending to show the sale to Gideon to be fraudulent, and also to testify to acknowledgments of her late husband to that effect. To this testimony the defendant objected, on the ground that she was interested on the part of the plaintiff, and not legally admissible to testify to the sayings and doings of her late husband in relation to the farm. But said Louis was permitted to testif—

CALEDONIA,
March,
1833.
Edgell
vs.
Bennett and
Lowell.

After stating the evidence in the case, the court charged the jury as follows:

If you find from the evidence that M. M. Lowell was in embarrassed circumstances; that he had little or no property in this state besides his farm in Lyndon ; that he sold this farm for the express purpose of putting himself or his property beyond the reach of legal process, and thereby to *delay* or *defeat* his creditors in the collection of their debts, it was a fraudulent conveyance on his part, although he sold the farm for *its full value.* If Gideon, at the time of sale, knew of the fraudulent intent of M. M. in selling his farm as aforesaid, then Gideon, as purchaser, was *privy* to said fraudulent intent, and it is void in his hands as to the creditors of M. M.

The court further observed, that if M. M.'s object was simply to pay his honest debts, and it was so understood by Gideon, then it was not a fraudulent sale. A debtor may pay one creditor and leave another unpaid; or he may show preference to one creditor before another; and this is not fraudulent.

The jury returned a verdict for the plaintiff to recover the seizin and possession of the land, and damages and costs.

The defendants made their exceptions, which were allowed and certified.

In this case there was also a motion for a new trial, because the jury, who rendered the verdict, before agreeing on the same, separated themselves from each other and from the custody of the officer having them in charge, and retired to their several lodgings and about the village wherever they pleased, and so continued separate from about 7 o'clock, A. M. on the 9th of December, 1832, until about 8 o'clock, A. M. to the 10th of December, 1832. Also because the jury, after having agreed on a verdict, separated without sealing up their verdict, and returned the same into court open, and without being sealed up. Also because, in ascertaining the damages in said action, each juror marked or set down his opinion of the sum proper to be found for the plaintiff as the annual rent of said land or farm sued for, and then the jury or foreman added together the several sums so found by each juror, and divided the amount by the number 12 and made the result, multiplied by 3, (the supposed number of years the premises were occupied by the defendants since the plaintiff's levy,) the damages in the action.

*William Mattocks and James Bell for the defendants.*

*Isaac Fletcher and John Mattocks for the plaintiff.*

CALEDONIA,
*March,*
1833.

Edgell
*vs.*
Bennett and
Lowell.

The opinion of the court was delivered by

WILLIAMS, J.—The title of the plaintiff is by the levy of an execution in his favor against Micajah M. Lowell. The defendants' title is by deed from the same person of a date prior to the levy. The plaintiff contends, that the defendants' deed was fraudulent. Under a charge of the court, in which the law was very correctly given the jury, the title of the defendants was found to be fraudulent.

In the course of the trial, Louis Lowell, who was the widow of Micajah, the fraudulent grantor, was introduced as a witness. It appears that she was objected to, and was admitted by the court to testify. The inquiry now is, whether she was a competent witness; and this must depend on the question, whether she had any direct interest in the matter in controversy.

During coverture, the wife cannot be a witness where the husband has an interest. After the dissolution of the marriage by the death of the husband, she may be a witness, if not interested herself, and if the facts to which she is called to testify are such as are proper for her to relate. It was therefore no objection to this witness that her husband in his lifetime could not have been a witness; and there are no facts presented by the case by which we learn that she had any interest herself in the suit. It is true, that if the plaintiff fails to recover, he would be a creditor to the estate of her late husband for the amount of his execution; and it is also true, that the widow has an interest in some cases to prevent debts from coming against the estate, and also to increase the personal fund. Though not an heir, as was said in the argument, yet she is entitled to such portion of the personal estate as the court of probate shall think proper to assign to her, which shall not be less than one third which shall remain after the payment of the debts and funeral charges. If, therefore, her husband had died in this state, and left personal property more than enough to pay his debts, the witness would have an interest to have the plaintiff recover the lands levied on, and not on failure to recover come in as a creditor to the estate of her husband. To create this interest, however, it must have appeared that her husband died in this state the owner of personal estate, or left estate here to be administered upon. Neither of these facts are presented in the case, and the inference is strong, that neither of them is true. We cannot discover that she had any interest in the event of the suit which should exclude her from being a witness.

It does not appear that any question was made to the county

court whether the facts to which she testified were of that nature that she could not with propriety testify to them.    It has been argued here, however, that her testimony as to the declarations of her husband ought not to have been received.

The declarations of a grantor, after making and delivering a deed, are not to be received to prove it fraudulent, and if testimony to that effect, whether coming from this witness or any one else, had been directly objected to and admitted by the court, the verdict must have been set aside.    If the declarations of the husband were received as evidence of the facts related by him, it was mere hearsay, and therefore inadmissible; or if they were received to contradict the testimony which he had given on a former trial, (for it seems his testimony on a former trial was given in evidence in this,) they were inadmissible as conversations which had passed between husband and wife during coverture, and which are to be kept inviolable as family confidential conversations.—*Munroe* vs. *Twistleton*, Peake on Evidence, appendix 44.    *Doker, Ex'r Doker*, vs. *Hasler, Ryan and Moseley*, N. P. Cases, 148.

None of these objections appear to have been made and presented to the court below, nor does the testimony of Mrs. Lowell appear to be of the character mentioned, but was principally in relation to the doings and sayings of Gideon Lowell, one of the defendants.    We see nothing in her testimony to which she would have been precluded from testifying in the life-time of her husband, except the declarations of her husband after the execution of the deed; and it does not appear that this was objected to on that ground, or that the county court have decided that such testimony was admissible.    There is no ground on which we ought to send this case to another trial, or reverse the judgment of the county court.

The motion for a new trial on account of the jury separating is in effect disposed of by the decision of the court in the case of *Bliss* vs. *Kittridge*.    It was a motion addressed to the discretion of the county court, and their decision thereon is not subject to revision in this court.

The judgment of the county court is affirmed.